

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| CUSTOM POLYMERS PET, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:15-04882-MGL |
| | § | |
| GAMMA MECCANICA SPA; INNOVATIVE | § | |
| RECYCLING SOLUTIONS LLC; and | § | |
| GAMMA MECCANICA NORTH AMERICA, | § | |
| Defendants. | § | |

---

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT GAMMA MECCANICA SPA'S MOTION TO STAY
AND GRANTING PLAINTIFF'S MOTION FOR AN ANTI-SUIT INJUNCTION

---

## I.    INTRODUCTION

This is a breach of contract action.  The Court has jurisdiction over the matter under 28 U.S.C. § 1332.  Pending before the Court are  Defendant Gamma Meccanica SpA (Gamma)'s motion to stay, ECF No. 26, and Plaintiff Custom Polymers PET, LLC (Custom)'s motion for an anti-suit injunction, ECF No. 8.  Having carefully considered the motions, the responses, the replies, the supplemental briefs, the sur replies, the record, and the applicable law, it is the judgment of the Court that Gamma's motion will be denied, whereas Custom's motion will be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY

Custom is a plastic recycling company incorporated in North Carolina with its principal place of business in Alabama.  ECF No. 33 at 2.  Gamma is an Italian company that manufactures plastics

reprocessing equipment. ECF No. 8-1 at 2. Meanwhile, Defendant Innovative Recycling Solutions, LLC (Innovative) is a South Carolina company that serves as Gamma's sales agent in the United States pursuant to a sales representative agreement, and, as such, Innovative sometimes does business as Gamma Meccanica North America when promoting Gamma. ECF No. 25 at 3. Although the sales representative agreement establishes that Innovative is not Gamma's officer, managing agent, or general agent, ECF No. 27 at 2, during the time relevant to this action, the owners of Innovative and Gamma indicated that the two companies were participating in a joint venture, ECF No. 39 at 2.

On January 14, 2014, Custom entered into a contract with Innovative—doing business as Gamma Meccanica North America—and Gamma for the purchase, design, delivery, installation, and servicing of custom equipment for the reprocessing of plastic waste material. ECF No. 33 at 3; ECF No. 25 at 2; ECF No. 1-1. The total price for the equipment under the contract was $4,200,000.00. ECF No. 8-1 at 4. The contract provides in relevant part that South Carolina law will govern any dispute under the contract, but, notably, the contract does not exclude application of the United Nations Convention on Contracts for the International Sale of Goods (CISG). ECF No. 26-1 at 3. Further, the contract contains Custom's consent to the "jurisdiction of the courts of the State of South Carolina." ECF No. 1-1 at 4.

Upon entering into the contract, Gamma worked with IRV Systems, s.r.l. (IRV), an Italian company, to manufacture the equipment for Custom. ECF No. 26-1 at 2. The equipment was installed at Custom's facility in Athens, Alabama, in late 2014 and early 2015. ECF No. 33 at 3. During the installation and start-up process, Custom worked directly with Innovative's agent, Heath

Sellers, on a daily basis, with Sellers providing technical support to Custom and coordinating the servicing of the equipment. *Id.*

According to Custom, the equipment delivered by Gamma failed to work properly from the beginning. *Id.* Custom notified Gamma of the deficiencies in the equipment's performance in March 2015, and Gamma and Innovative worked to correct the problems with the equipment to no avail until August 2015. *Id.*; ECF No. 28 at 3. In August 2015, counsel for Custom sent a notice of default to Gamma, demanding that Gamma bring the equipment up to the minimum requirements under the contract by September 30, 2015. ECF No. 8-1 at 6. Counsel for Gamma responded to the notice of default in September 2015, and the parties began working toward a possible resolution of the dispute. ECF No. 33 at 4. Ultimately, Gamma sent a settlement proposal to Custom on November 6, 2015, which Custom rejected on November 12, 2015, with a counter-proposal demanding removal of the equipment from Custom's Alabama facility. ECF No. 25 at 4.

At this point, Gamma hired Italian counsel, who began preparing an Italian lawsuit to recover the balance of $681,782.18, which remained under the contract. ECF No. 26-1 at 3-4; ECF No. 8-7 at 3. During this same time period, Gamma responded to Custom on November 18, 2015, indicating that it was working on a response to Custom's November 12, 2015, letter and would have a response to Custom by November 23, 2015. ECF No. 33 at 4. Upon prompting from Custom, on November 30, 2015, Gamma submitted a response to Custom's settlement proposal, in which it invited Custom's representatives to come to Italy for discussion. *Id.*

Unbeknownst to Custom, on December 1, 2015, Gamma's Italian counsel delivered the original Italian complaint and two service copies to the Judicial Officer for the Court of Reggio Emilia, Italy. ECF No. 38 at 2. The Judicial Officer then signed and stamped the notice of service

3

attached to the complaint on December 2, 2015, signifying the commencement of service of the complaint on Custom by registered mail. *Id.* Meanwhile, on December 9, 2015, Custom, who remained unaware of the Italian lawsuit, filed this action with the Court. ECF No. 33 at 4-5. On December 10, 2015, Custom sent a courtesy copy of Custom's Complaint to Gamma. *Id.* at 5. Gamma likewise sent a courtesy copy of the Italian complaint to Custom on December 11, 2015. *Id.* Gamma filed the Italian summons with the Italian clerk of court on that same date. ECF No. 34 at 3.

Following these events, Custom delivered its Summons and Complaint to Innovative on December 17, 2015, seeking to serve both Gamma and Innovative with process. ECF No. 33 at 5. Upon inquiry from this Court, the parties informed the Court that the first hearing in the Italian action is set for June 9, 2016, and at least twenty days prior to the hearing, Custom must file its defense brief in which it will argue its jurisdictional defenses and any other defenses to the Italian action. ECF No. 36 at 2.

On December 22, 2015, Custom filed its motion for an anti-suit injunction requesting the Court enjoin Gamma from prosecuting the Italian action, ECF No. 8, to which Gamma responded in opposition and contemporaneously filed its motion to stay the proceedings in this Court until the Italian lawsuit has ended, ECF Nos. 25, 26. Innovative likewise filed a response in opposition to Custom's motion, ECF No. 27, and Custom filed replies to the responses and a response in opposition to Gamma's motion to stay, ECF Nos. 28, 29, 33, to which Gamma filed a reply, ECF No. 34. The Court subsequently directed the parties to answer several interrogatories to clarify outstanding matters. The parties filed responses to all of these interrogatories through supplemental briefings and sur replies. Additionally, Custom amended its Complaint in this action, in which it

4

requests in part that the Court issue an anti-suit injunction.  ECF No. 37.  The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of the motions.

### III.     CONTENTIONS OF THE PARTIES

In its motion to stay, Gamma alleges that a stay of the instant action is proper under principles of international comity.  ECF No. 26-1 at 1.  Utilizing the analysis set forth by *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000), Gamma asserts, as does Custom, that the parties and issues raised in the two lawsuits are substantially similar.  ECF No. 26-1 at 5-6. Gamma also declares that the Italian action was initiated prior to this action and insists that South Carolina has little connection to the lawsuit.  *Id.* at 6-8.  Moreover, Gamma posits that this Court and the Italian court are equally able to apply the substantive law and avers that the Italian court is an adequate forum that can award complete relief.  *Id.* at 8-9.  Finally, Gamma stresses that neither suit has substantially progressed, judicial efficiency favors a stay, and a stay properly respects international comity.  *Id.* at 9-11.

On the other hand, in its motion for an anti-suit injunction, Custom contends that the Court should enjoin Gamma from prosecuting the Italian action under any of the three standards established to evaluate motions for anti-suit injunctions.  ECF No. 8-1 at 9-10.  First, Custom argues that the Court should grant its motion for an anti-suit injunction under the liberal approach adopted by the Fifth, Seventh, and Ninth Circuit Courts of Appeals.  *Id.* at 10-17.  Using this approach, Custom propounds that the parties and issues are duplicative in both this action and the Italian action.  *Id.* at 10.  Further, Custom maintains that the Italian lawsuit threatens the following important public policies of this forum: (1) the parties' contractual agreement that South Carolina

5

law governs the dispute and that South Carolina is an appropriate forum; (2) the public policy that disfavors forum shopping and races to the courthouse; and (3) judicial economy.  *Id.* at 11-14.  Additionally, Custom proclaims that the Italian lawsuit is vexatious and oppressive, threatens this Court's jurisdiction, and prejudices Custom.  *Id.* at 14-16.  Custom also states that the balance of the equities warrants an anti-suit injunction.  *Id.* at 16-17.

Second, Custom advances that the Court should grant its motion for an anti-suit injunction under the restrictive approach adopted by the First, Second, Third, Sixth, Eighth, and D.C. Circuit Courts of Appeals, claiming that the Italian action threatens the jurisdiction of this Court and the important public policies of this forum as noted above.  *Id.* at 17-18.

Third, Custom urges that its motion for an anti-suit injunction should be granted because it is necessary to avoid a miscarriage of justice.  *Id.* at 18-19.

Gamma disputes each of the arguments advanced by Custom, initially stating that it has not been properly served because Innovative is not its officer, managing or general agent, or agent authorized to receive service of process.  ECF No. 25 at 6.  For its part, Innovative likewise opposes Custom's motion for an anti-suit injunction but supports Gamma's motion to stay.  ECF Nos. 27, 31.  In particular, Innovative proclaims that the provisional injunctive relief sought by Custom must be pled in the Complaint and match the ultimate relief sought.  ECF No. 27 at 2.  Custom, meanwhile, disputes each of Gamma's and Innovative's assertions and avouches that the Court should grant its motion for an anti-suit injunction.  The Court will now consider each of the parties' claims.

IV.     **DISCUSSION AND ANALYSIS**

A.     **Whether Gamma Was Properly Served**

As an initial matter, Gamma and Innovative contend that Gamma is not properly before this Court because it has not yet been served with process.  ECF No. 25 at 6.  Service of process is a prerequisite for the issuance of an enforceable injunction such as the anti-suit injunction Custom requests in this case.  *See R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).  The Federal Rules of Civil Procedure provide that a corporation such as Gamma may be served either (1) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," or (2) by following the state law rules for effecting service.  Fed. R. Civ. P. 4(h)(1).

Using this standard, Gamma and Innovative assert that service of process on Innovative failed to constitute service of process on Gamma because of the terms of Gamma and Innovative's sales representative agreement.  ECF No. 25 at 7.  As previously noted, the sales representative agreement states that Innovative is not Gamma's officer, managing agent, or general agent.  ECF No. 27 at 2.  Accordingly, Gamma and Innovative contend that service must be made on an actual agent, and because Innovative is not Gamma's actual agent, Gamma has not been properly served with process.  ECF No. 39 at 2.

Gamma's and Innovative's arguments are fundamentally flawed.  In South Carolina, "[a]n agent's high level of actual or apparent responsibility suffices to permit service to be effective as against the principal."  *Graham Law Firm, P.A. v. Makawi*, 721 S.E.2d 430, 433 (S.C. 2012).  "[A]pparent authority is when the principal knowingly permits the agent to exercise authority, or

7

the principal holds the agent out as possessing such authority." *Roberson v. S. Fin. of S.C., Inc.*, 615 S.E.2d 112, 115 (S.C. 2005).

Here, Innovative serves as Gamma's sales agent in the United States pursuant to the sales representative agreement, and, as such, Innovative sometimes does business as Gamma Meccanica North America when promoting Gamma.  ECF No. 25 at 3.  Moreover, during the time relevant to this action, the owners of Innovative and Gamma indicated that the two companies were participating in a "joint venture," ECF No. 39 at 2, and Gamma told Custom in multiple written communications that Innovative was its "agent," ECF No. 29 at 2.  *See* ECF No. 28-4.

Additionally, Innovative—doing business as Gamma Meccanica North America—and Gamma both entered into the contract with Custom.  ECF No. 1-1.  Under these facts, Gamma unquestionably held out Innovative as its agent possessing authority to act on its behalf, and as such, Innovative had the apparent authority to act on Gamma's behalf in spite of the terms of the sales representative agreement, including having the authority to accept service of process.  Gamma's and Innovative's arguments to the contrary overlook established South Carolina law recognizing that apparent agency is sufficient for service of process on the principal.  Therefore, when Custom served Innovative with the Summons and Complaint for Gamma on December 17, 2015, ECF No. 33 at 5, that service constituted service of process on Gamma pursuant to its apparent agency relationship with Innovative.

**B.     Requesting Injunctive Relief in the Complaint**

Before reaching the substantive motions, the Court must also address Gamma's and Innovative's arguments regarding Custom's failure to request an anti-suit injunction in its initial Complaint.  Innovative first raised the issue in its response in opposition to Custom's motion for an

8

anti-suit injunction, proclaiming that the provisional injunctive relief sought by Custom must be pled in the Complaint and match the ultimate relief sought.  ECF No. 27 at 2.  In response to this argument, Custom states that it amended its Complaint as of right on March 22, 2016, and the Amended Complaint specifically requests an anti-suit injunction against Gamma.  ECF No. 37 at 19.  But, Gamma now contends that Custom's Amended Complaint is defective because Custom filed its Amended Complaint without leave from this Court, and Custom is not entitled to injunctive relief.  ECF No. 42 at 4.

However, Gamma's argument is incomplete at best.  Under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  First, subsection (A) is inapplicable as twenty-one days had long passed when Custom filed its Amended Complaint.  As to subsection (B), neither Gamma nor Innovative had filed their answers.  Nor had they filed any motions under Rule 12, as this Court's January 19, 2016, Order allows the parties twenty-one days after the Court rules on Custom's motion for an anti-suit injunction to file those motions.  ECF No. 22 at 1.  Therefore, Custom properly filed its Amended Complaint as a matter of right without leave from this Court under Rule 15(a)(1)(B).  Consequently, Custom's failure to request an anti-suit injunction in its original Complaint is moot.

### C.    Gamma's Motion to Stay

The Court now turns to Gamma's motion to stay this proceeding.  *See* ECF No. 26.  Gamma requests this Court exercise its discretion to stay this litigation under principles of international

comity.  ECF No. 26-1 at 1; *see Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (noting that a court must exercise its discretionary judgment when considering whether to stay proceedings pending before it).  "International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'"  *In re French*, 440 F.3d 145, 152 (4th Cir. 2006) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).  Notably, "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction."  *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994).

However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Moreover, "[a]s has been reiterated time and again, the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (quoting *Colo. River*, 424 U.S. at 817).  Further, abstention is rarely invoked and only under exceptional circumstances may a federal court order a stay or dismissal of an action to avoid duplicative litigation in a foreign country.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983); *Amsley v. W. Va. Racing Comm'n*, 378 F.2d 815, 818 (4th Cir. 1967) ("[T]he doctrine of abstention is to be imposed sparingly, in rare circumstances . . . .").

The Fourth Circuit follows the *Colorado River* abstention doctrine when addressing whether to stay a case under principles of international comity.  *Al-Abood*, 217 F.3d at 232.  Under this approach, the "threshold" inquiry "is whether there are parallel suits."  *Id.*  "If parallel suits exist, then a district court must carefully balance several factors, 'with the balance heavily weighted in

favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). These factors include (1) "the relative order of the two suits," (2) "the relative inconvenience of the federal forum," (3) "the source of law in the case," and (4) "the relative progress of the two proceedings." *Id.* The Court may also weigh policies regarding international comity concerns, fairness to the litigants, and the efficient utilization of judicial resources. *Turner Entm't Co.*, 25 F.3d at 1519-22.

The Court is now ready to apply the facts of this case to the factors listed above.

### 1.     *Whether this lawsuit and the Italian lawsuit are parallel*

First, the Court must consider whether this lawsuit and the Italian lawsuit are parallel. "Suits are considered parallel if substantially the same parties litigate substantially the same issues in different forums." *Al-Abood*, 217 F.3d at 232 (internal quotation marks omitted). In this action, Custom sues Gamma, Innovative, and Gamma Meccanica North America for breach of the underlying contract. ECF No. 37. Meanwhile, in the Italian action, Gamma alleges that Custom breached the same contract, seeking to recover the payment that remains outstanding. ECF No. 8-7 at 3. As already noted, Custom and Gamma agree that the claims raised in the two lawsuits are substantially similar. ECF No. 26-1 at 5-6. Thus, the Court holds that the issues in these two suits are substantially similar.

Moreover, the parties are substantially similar. As already noted, Custom admits that the parties and issues in both actions are the same in its motion for anti-suit injunction, although it argues that this case is more comprehensive because it includes Innovative as a defendant. ECF No. 8-1 at 10-11. Similarly, as stated above, Gamma stipulates that the parties and issues raised in the two lawsuits are substantially similar. ECF No. 26-1 at 6. Gamma's failure to include Innovative as a party in the Italian action does not affect the analysis because the absence of a party alone does

11

not defeat the parallel nature of the lawsuits. *See Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 187 (4th Cir. 2001). Based on all the foregoing, this Court holds that this lawsuit and the Italian lawsuit are parallel.

2.    *Whether the Italian action was initiated prior to this action*

Having established that this action and the Italian action are parallel suits, the Court must now "carefully balance several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Al-Abood*, 217 F.3d at 232 (quoting *Moses H. Cone*, 460 U.S. at 16). The first factor to consider is "the relative order of the two suits." *Id.*

As previously explained, Gamma's Italian counsel delivered the original Italian complaint and two service copies to the Judicial Officer for the Court of Reggio Emilia, Italy, on December 1, 2015. ECF No. 38 at 2. The Judicial Officer then signed and stamped the notice of service attached to the complaint on December 2, 2015, signifying the commencement of service of the complaint on Custom by registered mail. *Id.* Meanwhile, Custom filed the instant action in this Court on December 9, 2015, with no knowledge of the Italian action initiated by Gamma. ECF No. 33 at 4-5. On December 11, 2015, Gamma filed the Italian summons with the Italian clerk of court. ECF No. 34 at 3.

Through support from its Italian counsel, Custom claims that the instant action precedes the Italian action because Gamma neglected to file the Italian action until December 11, 2015, whereas Custom filed this case on December 9, 2015. ECF No. 33 at 7. Custom further cites two Italian cases that purportedly establish that the Italian action will not commence for purposes of determining priority until it has been served on Custom, which had not occurred as of April 8, 2016, the date Custom filed its sur reply. ECF No. 45 at 2; ECF No. 41-1 at 7, 11.

12

All parties agree that the first step in commencing a legal proceeding in Italy occurs when the party delivers the complaint to the Judicial Officer under Article 163 of the Italian Code of Civil Procedure.  Art. 163 Codice di procedura civile [C.p.c] (It.).  Under Article 149 of the same code, the second step takes place when the Judicial Officer signs and stamps the notice of service attached to the complaint, signifying the commencement of service of the complaint on the defendant.  Art. 149 C.p.c. (It.).  Further, Article 165 provides that the plaintiff in an Italian action must file the complaint with the Italian clerk of court within ten days after commencement of service upon the defendant.  Art. 165 C.p.c. (It.).  Custom points out that none of these civil code provisions state when a lawsuit is "initiated" or "commenced" in Italy, and, as a result, contends that the Italian action commenced after the instant action.  ECF No. 41 at 2.

Nevertheless, Custom's argument fails because the Court is persuaded that the Brussels Regulation promulgated by the European Union, of which Italy is a Member State, directly addresses the priority issue.  ECF No. 44 at 3; ECF No. 46 at 3; *see* Regulation (EU) No. 1215/2012 of the European Parliament and of the Council of 12 December 2012 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters (recast), arts. 29, 32, 2012 O.J. (L 351) 1, 12, 13.  Section 9, article 29 of the Brussels Regulation states that in cases involving parallel lawsuits brought in courts of different Member States, the action in the court that is "first seised" of the action is granted priority.  Reg. 1215/2012 § 9 art. 29, 2012 O.J. at 12.  Article 32 of the same section explains that a court is "seised" of an action:

> (a) at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the claimant has not subsequently failed to take the steps he was required to take to have service effected on the defendant; or
> (b) if the document has to be served before being lodged with the court, at the time when it is received by the authority responsible for service, provided that the

13

claimant has not subsequently failed to take the steps he was required to take to have the document lodged with the court.

*Id.* § 9 art. 32, 2012 O.J. at 12.

Consequently, the European Union priority rules require the courts of the Member States to recognize the relevant date for purposes of priority among competing Member States, of which Italy is one of them, as the date on which the complaint was "received by the authority responsible for service." *Id.* Subsection (b) applies to Italian cases pursuant to Articles 149 and 163 of the Italian Code of Civil Procedure. In this case, the date the complaint was received by the authority responsible for service was December 1, 2015, when Gamma delivered its complaint to the Italian Judicial Officer, who then commenced service on December 2, 2015. ECF No. 38 at 2.

Assuming without deciding that the Brussels Regulation is applicable to the issue of priority before this Court, the Court concludes, for purposes of this case only, that December 1, 2015, the date that Gamma's Italian counsel delivered the original Italian complaint and two service copies to the Judicial Officer for the Court of Reggio Emilia, Italy, is the relevant date for determining priority of the Italian action. Therefore, the Italian action was initiated prior to this one.

### 3. Whether South Carolina is a more convenient forum than Italy

The second factor to consider when evaluating the motion to stay is "the relative inconvenience of the federal forum," *Al-Abood*, 217 F.3d at 232, which, in this case, is the district of South Carolina. Gamma contends that South Carolina is an inconvenient forum for this dispute, stating that only Innovative and its agent, Heath Sellers, reside in South Carolina. ECF No. 34 at 5. Additionally, Gamma avers that the "vast majority" of its relevant documents are in Italian, and most of its witnesses are not fluent in English. *Id.* at 6. Gamma also claims that IRV is a potentially responsible party and likely a key witness, who can be more easily dealt with in Italy. *Id.* Lastly,

14

Gamma asseverates that Custom engaged in forum shopping by filing suit outside its home state of Alabama and infers that South Carolina is merely convenient for Custom's counsel. *Id.* at 5.

Custom counters by asserting that most of the parties are located in the United States, almost all the witnesses are located in the United States, and the equipment that is the subject matter of this dispute is located in the United States. ECF No. 33 at 8-9. As noted by Custom, Custom is a North Carolina company with its headquarters in Alabama, and all of its witnesses are located in North Carolina and Alabama. ECF No. 33 at 8. Moreover, Innovative is a South Carolina company, and its agent, Heath Sellers, resides in South Carolina. *Id.* Based on Custom's interactions with Sellers during contractual negotiations and later servicing of the equipment, Custom believes Sellers to be one of the most crucial witnesses in this dispute. *Id.* at 9. Further, several subcontractors and potential witnesses who participated in the installation and servicing of the equipment are located in the United States. *Id.* Additionally, the equipment is located at Custom's facility in Alabama. *Id.* Finally, much of the written evidence is in English and would have to be translated into Italian if the Italian action were allowed to proceed. *Id.*

Although Gamma alleges that Custom engaged in forum shopping by filing suit in South Carolina, Gamma ignores the plain language in the contract that contains Custom's consent to the "jurisdiction of the courts of the State of South Carolina." ECF No. 1-1 at 4. Further contractual language establishes that South Carolina law governs disputes under the contract. *Id.*

It is for these reasons that the Court thinks that Custom was justified in bringing suit in this forum. Under the contract, Gamma retained its right to sue in alternate jurisdictions, but Custom submitted to this Court's jurisdiction, and Gamma's misleading argument that Custom engaged in forum shopping by suing in South Carolina rather than in Alabama strains the bounds of credulity.

With the majority of the parties, witnesses, documentary evidence, and physical evidence being located in either South Carolina, Alabama, or North Carolina, and the latter two locations being much closer to South Carolina than Italy, it is readily evident to this Court that South Carolina is a more convenient forum than Italy, notwithstanding Gamma's speculative arguments regarding the importance of IRV, a non-party to the contract at issue. Thus, this factor weighs against granting Gamma's motion to stay.

4.  *Whether (1) the CISG is the proper source of law, and (2) South Carolina choice of law rules apply to fill in any gaps left by the CISG*

Another factor the Court should consider is "the source of law in the case." *Al-Abood*, 217 F.3d at 232. Gamma propounds that the CISG governs this dispute and the Court should stay this action on that ground. ECF No. 26-1 at 8. Custom, however, advances that South Carolina law governs this dispute under the terms of the contract, but even if the CISG applies, South Carolina choice of law rules should fill in the gap where the CISG is silent on a legal issue. ECF No. 33 at 11. Importantly, both Custom and Gamma agree that this Court is equally able to apply the CISG as the Italian court. *Id.*; ECF No. 26-1 at 8.

As previously noted, South Carolina law is applicable to disputes under the contract at issue, ECF No. 1-1 at 4, and as an international treaty signed by both the United States and Italy, the CISG is the law of South Carolina to be applied to this dispute. *See BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003) ("A signatory's assent to the CISG necessarily incorporates the treaty as part of that nation's domestic law."); *see also Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027 (2d Cir. 1995) (noting that the United States and Italy are both signatories to the CISG); William S. Dodge, *Teaching the CISG in Contracts*, 50 J. Legal Educ. 72, 72 (2000) ("As a treaty the CISG is federal law, which preempts state common law and the

UCC.").  Moreover, contrary to Custom's argument that the CISG does not apply, "[w]here parties seek to apply a signatory's domestic law in lieu of the CISG, they must affirmatively opt-out of the CISG."  *BP Oil Int'l*, 332 F.3d at 337.  Here, no provision of the contract expressly excludes the application of the CISG, and the CISG, which preempts South Carolina law, thus applies to this contractual dispute.

However, even though the CISG governs this dispute, where the CISG is silent on a legal issue, a court should apply the choice of law rules of the forum where it sits to fill in the gap. *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 400 (3d Cir. 2010) ("The CISG says that '[q]uestions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law [i.e. choice of law].'" (quoting 15 U.S.C. App., Art. 7(2))).  Therefore, here, under South Carolina law, the choice of law clause in the contract providing that South Carolina law governs will be enforced and South Carolina law will apply where the CISG is silent.

In the Italian action, Gamma has requested that the Italian court apply the Italian Civil Code where the CISG is silent, ECF No. 8-7, in direct contravention of the contract between the parties. Because the parties contractually agreed that South Carolina law is applicable to any dispute under the contract, it is disingenuous for Gamma now to make that argument.

Therefore, in sum, this Court holds that although the CISG is the proper source of law to cover any contractual dispute between the parties, South Carolina choice of law rules apply to fill in the gaps left by the CISG.  This forum is thus more appropriate than Italy, and this factor weighs against granting a stay as well.

5.     *Whether either action has substantially progressed*

*Al-Abood* further provides that the Court should consider "the relative progress of the two proceedings." 217 F.3d at 232. Here, both Custom and Gamma agree that neither this action nor the Italian action have substantially progressed. ECF No. 26-1 at 9-10; ECF No. 33 at 12. Given the early procedural posture of both actions, this factor is neutral.

6.     *Whether the United States, and, by extension, South Carolina, has a stronger interest in the litigation than Italy.*

Yet another factor the Court may consider involves "[t]he ramifications of international comity." *Turner Entm't Co.*, 25 F.3d at 1519. "[R]elevant to considerations of international comity are the relative strengths of the American and [Italian] interests." *Id.* at 1521. It is axiomatic that disputes involving corporate citizens are important to United States courts because courts have an interest in having localized controversies resolved at home. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (listing as one of the factors the court is to consider in transferring a case or keeping it is "the local interest in having localized interests decided at home" (internal quotation marks omitted)).

In this case, Custom is a North Carolina company with its headquarters in Alabama, and Innovative is a South Carolina company with its headquarters in South Carolina. ECF No. 33 at 12. Although Gamma is an Italian company, it contracted with Custom and Innovative to provide the equipment at issue, taking advantage of this forum. Additionally, the equipment is located in Alabama. *Id.* at 9. Because this action involves a contractual dispute where two of the three parties are United States corporate citizens, the United States, and by extension, South Carolina, has a stronger interest in the litigation than Italy. Therefore, this factor weighs against granting a stay.

18

7.     *Whether it is fair to require Gamma to litigate the action in this forum*

This Court may also weigh considerations of fairness to the litigants when determining whether to stay this action. *Turner Entm't Co.*, 25 F.3d at 1521-22. Gamma argues that it is fair to require Custom to litigate in Italy because the Italian action has priority over this action, and the Italian court can allegedly provide Custom with the full relief it seeks. ECF No. 26-1 at 10. Although Custom disputes these assertions for a number of reasons, the fact of the matter remains that Gamma, Custom, and Innovative all signed the contract that indisputably contains Custom's consent to the "jurisdiction of the courts of the State of South Carolina." ECF No. 1-1 at 4. Through this provision, Custom submitted to the jurisdiction of this Court, and Gamma thus certainly anticipated being hailed into this Court in the event of a dispute under the contract. Therefore, it is fair to require Gamma to litigate the action in this forum, because Gamma reasonably anticipated being sued in this forum. Thus, this factor also weighs against granting a stay.

8.     *Whether considerations of judicial economy dictate that both actions cannot proceed simultaneously*

The final factor the Court may evaluate is the efficient utilization of judicial resources. *Turner Entm't Co.*, 25 F.3d at 1522. On this issue, the parties agree that judicial economy would not be served by allowing both this action and the Italian action to proceed concurrently. ECF No. 33 at 15; ECF No. 34 at 10. Standing alone, judicial economy supports granting a stay, but the Court is considering Gamma's motion to stay in conjunction with Custom's motion for an anti-suit injunction. As will be further articulated, the Court will grant Custom's motion for an anti-suit injunction, thus serving judicial economy by permitting only one of these parallel lawsuits to proceed, namely this action.

19

After carefully balancing the factors set forth by *Al-Abood* and other relevant cases, the Court holds that the factors, quantitatively but more importantly qualitatively, weigh against granting Gamma's motion to stay, particularly when the Court evaluates the factors "'with the balance heavily weighted in favor of the exercise of jurisdiction.'" 217 F.3d at 332 (quoting *Moses H. Cone*, 460 U.S. at 16). Based on all the foregoing, the Court will deny Gamma's motion to stay.

### D.     Custom's Motion for an Anti-Suit Injunction

Finally, the Court will address Custom's motion for an anti-suit injunction. ECF No. 8. Custom petitions this Court to use its power to enjoin litigants from prosecuting foreign lawsuits by issuing an anti-suit injunction as to Gamma, thus enjoining Gamma from prosecuting the Italian action. ECF No. 8-1 at 9-10.

It is well-established that federal district courts have the power to enjoin litigants from prosecuting foreign lawsuits through issuance of anti-suit injunctions. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996); *see also Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984). Although such an anti-suit injunction operates merely against the parties, it "effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987). Accordingly, when issuing an anti-suit injunction against prosecution of a foreign suit, courts must give due regard to principles of international comity. *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981). To that end, anti-suit injunctions of foreign proceedings should be "used sparingly and should be granted only with care and great restraint." *China Trade*, 837 F.2d at 35 (internal

20

quotation marks omitted). A district court's decision to grant an anti-suit injunction is reviewed for abuse of discretion. *See, e.g.*, *Kaepa, Inc.*, 76 F.3d at 626; *Gau Shan Co.*, 956 F.2d at 1352.

With that in mind, under certain circumstances, a district court may properly issue an anti-suit injunction. The Fourth Circuit Court of Appeals has not addressed the precise legal standard for the district courts to employ when determining whether the issuance of an anti-suit injunction is proper, and the remaining circuit courts of appeals are split between two approaches. *Kaepa, Inc.*, 76 F.3d at 626-27. The two predominant legal standards are: (1) the liberal approach adopted by the Fifth, Seventh, and Ninth Circuits; and (2) the restrictive approach adopted by the First, Second, Third, Sixth, Eighth, and D.C. Circuits. *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 17 (1st Cir. 2004); *see, e.g.*, *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359-60 (8th Cir. 2007); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 161 (3d Cir. 2001). Some courts have also held that an anti-suit injunction is proper to avoid a miscarriage of justice. *See Laker Airways Ltd.*, 731 F.2d at 927 ("The equitable circumstances surrounding each request for an injunction must be carefully examined to determine whether . . . the injunction is required to prevent an irreparable miscarriage of justice.").

The Court now turns to consider each of the three approaches as it applies them here.

1.    *Whether an anti-suit injunction is warranted under the liberal approach*

The Court will first use the liberal approach to determine whether an anti-suit injunction is warranted in this case. The initial issue under the liberal approach is whether the two lawsuits involve parallel parties and issues. *Seattle Totems*, 652 F.2d at 855-56. If the two lawsuits are parallel, an anti-suit injunction may be issued where: (1) a policy of the forum issuing the anti-suit injunction would be frustrated; (2) the foreign litigation would be vexatious or oppressive; (3) the

21

issuing court's jurisdiction is threatened; or (4) other equitable considerations would be prejudiced. *Id.* at 855. The satisfaction of any one factor suffices to warrant an anti-suit injunction. *See id.*

> a.     Whether a policy of this forum would be frustrated

As already observed, this action and the Italian action involve substantially similar issues and parties, and, thus, the lawsuits are parallel. Turning to the first factor, whether a policy of the forum issuing the anti-suit injunction would be frustrated, Custom asserts that three public policies of this forum would be frustrated. ECF No. 8-1 at 11-14; ECF No. 28 at 11. First, Custom claims that Gamma's Italian suit undermines the parties' contractual agreement that South Carolina law controls and that this Court is an appropriate forum for this dispute. ECF No. 8-1 at 11. As noted above, the Court agrees that Custom properly initiated the action in this forum pursuant to the contractual language, and, further, South Carolina choice of law rules will apply to fill in any gaps left by the CISG. As already observed, because Gamma has requested the Italian court to apply the Italian Civil Code to fill in any gaps where the CISG is silent, in direct contravention of the contract between the parties, the public policy of enforcing the provisions of a contractual agreement is threatened by the Italian action.

Second, Custom contends that Gamma's Italian suit threatens the public policy that disfavors forum shopping and races to the courthouse. *Id.* at 12. Gamma, in turn, acknowledges that it filed a lawsuit while the parties were engaged in settlement negotiations, but astutely points out that Custom followed the same course of action by filing the instant action during negotiations. ECF No. 25 at 13-14. Given the facts before it, this factor weighs in favor of neither party's position.

Third, Custom propounds that judicial economy would be frustrated in the absence of an anti-suit injunction. ECF No. 8-1 at 14. As previously discussed, Gamma also agrees that judicial

economy would not be served by allowing both this action and the Italian action to proceed concurrently. ECF No. 34 at 10. This Court holds that "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause." *See In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g en banc*, 446 F.2d 907 (1971), *rev'd on other grounds sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). This Court's permitting the Italian action and this action to proceed concurrently would be an affront to the goal of judicial efficiency. Therefore, the Court holds that the public policy of judicial economy is threatened by the Italian action, and an anti-suit injunction is justified on this ground.

b.    Whether the foreign litigation would be vexatious or oppressive

Custom proclaims that the second factor under the liberal approach, whether the foreign litigation would be vexatious or oppressive, weighs in favor of granting an anti-suit injunction as well. ECF No. 8-1 at 14. If this Court were not to grant an anti-suit injunction, Custom would be forced to participate in concurrent, competing lawsuits thousands of miles apart. Custom further attests that the Italian court does not possess jurisdiction sufficient to hail Custom before it. *Id.* at 14-15. Based on the Court's analysis of the public policy favoring judicial economy, this Court holds this factor also weighs in favor of the Court's issuance of an anti-suit injunction.

c.    Whether this Court's jurisdiction is threatened

The third factor under the liberal approach, whether the issuing court's jurisdiction is threatened by foreign litigation, likewise weighs in favor of an anti-suit injunction. Gamma notes that in *in personam* actions like this one, true jurisdictional threats are rare. ECF No. 25 at 9 (citing

*Gau Shan Co.*, 956 F.2d at 1356). Nevertheless, if the foreign action "was instituted by the foreign defendant[] for the sole purpose of terminating the United States claim," then an anti-suit injunction is necessary to protect the issuing court's jurisdiction. *Laker Airways Ltd.*, 731 F.2d at 915. Here, Gamma's motion to stay the instant action demonstrates its desire to terminate the United States claim to further its lawsuit in Italy. ECF No. 26. Moreover, were this Court to decline to issue an anti-suit injunction and allow both cases to proceed concurrently, the Italian court could reach a decision on the merits prior to this Court rendering a decision. In that event, the Court could either refuse to act, allowing the Italian court's ruling govern and in essence abstain from properly exercising jurisdiction over the dispute. Or, it could act after the Italian court. A subsequent ruling that resulted in a holding opposite from that of the Italian court would present the parties with the Hobson's Choice of trying to act in a singular manner to abide by conflicting rulings. Given these undesirable alternatives, an anti-suit injunction is warranted here to protect this Court's jurisdiction.

   d.   Whether other equitable considerations would be prejudiced

   Custom also declares that the final factor under the liberal approach, whether other equitable considerations would be prejudiced, weighs in favor of an anti-suit injunction. ECF No. 8-1 at 16-17. As the Court has already held, South Carolina is a more convenient forum than Italy to adjudicate this dispute because the majority of the parties, witnesses, documentary evidence, and physical evidence are located in either South Carolina, Alabama, or North Carolina. This Court holds that "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause." *See Unterweser Reederei, Gmbh*, 428 F.2d at 896.

Consequently, this factor also favors issuance of an anti-suit injunction.  For all of these reasons, an anti-suit injunction is warranted under the liberal approach.

2.    *Whether an anti-suit injunction is warranted under the restrictive approach*

The Court will next utilize the restrictive approach to determine whether an anti-suit injunction is warranted in this case.  Courts adhering to the restrictive approach place greater emphasis on principles of international comity, and recognize that an anti-suit injunction is appropriate where the foreign action threatens (1) the jurisdiction of the district court and (2) important public policies of the forum.  *See, e.g.*, *Gau Shan Co.*, 956 F.2d at 1355.  In contrast to the liberal approach, where a showing of only one of the factors is sufficient to warrant an anti-suit injunction, both factors must be met under the restrictive approach.  *See id.*

Here, the Court has already examined the factors to be evaluated under the restrictive approach in its discussion of the liberal approach above and found that both factors weigh in favor of an anti-suit injunction.  Specifically, the Court's jurisdiction is threatened by the Italian action because Gamma's motion to stay demonstrates the interdictory nature of the Italian action.  Furthermore, as noted before, allowing both cases to proceed concurrently could present an untenable situation wherein this Court would either abstain from properly exercising its jurisdiction or force the parties to choose to abide by conflicting rulings.  These problematic courses of action convince the Court that its jurisdiction is threatened by the Italian action.

Moreover, the Italian action threatens the public policies of this forum.  Particularly, as detailed more fully above, the Italian case threatens the public policy of enforcing the provisions of the parties' contractual agreement providing that South Carolina law governs disputes under the contract.  Additionally, the Italian lawsuit threatens the public policy favoring judicial economy, as

permitting the Italian action and this action to proceed concurrently would result in simultaneous prosecution of the same issues in jurisdictions separated by thousands of miles. The public policy of having localized controversies resolved at home also would be frustrated by allowing the Italian suit to proceed. Consequently, under the restrictive approach, an anti-suit injunction is warranted because both of the factors are satisfied.

Although courts employing the restrictive approach place strong emphasis on principles of international comity, it simply cannot be said that the grant of the anti-suit injunction in this case actually threatens relations between the United States and Italy. *See Kaepa, Inc.*, 76 F.3d at 627. Notably, no public international issue is implicated in this case, as Custom, Gamma, and Innovative are all private parties engaged in a contractual dispute with each other. *See id.* Additionally, the contract at issue stipulates that South Carolina law will be utilized should any dispute arise. *See id.* The agreement also contains Custom's submission to this Court's jurisdiction, making it self-evident that South Carolina is the proper forum to hear the dispute. Therefore, issuing an anti-suit injunction in this case in no way "trample[s] on notions of comity." *See id.*

       3.     *Whether an anti-suit injunction is necessary to avoid a miscarriage of justice*

Because the Fourth Circuit has failed to adopt a particular approach toward the propriety of granting an anti-suit injunction in a given case, the Court will also consider the third approach taken by a minority of courts. As noted above, these courts have held that "each request for an injunction must be carefully examined to determine whether . . . the injunction is required to prevent an irreparable miscarriage of justice." *Laker Airways Ltd.*, 731 F.2d at 927. "When the availability of the domestic courts is necessary to a full and fair adjudication of the plaintiff's claims, a court should preserve that forum." *Id.* at 931-32.

Using this approach, Custom maintains that the Italian court where the Italian action is pending fails to provide for jury trials, limits accessibility to attorneys, and prohibits broad discovery.  ECF No. 8-1 at 18; ECF No. 28-5 at 2.  For these reasons, this Court holds that an anti-suit injunction is necessary to avoid a miscarriage of justice as to Custom in this case, primarily because the Italian action threatens to deprive Custom of the important right to a jury trial.  *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.").  Accordingly, an anti-suit injunction is warranted under all three approaches taken by courts that have examined the propriety of granting an anti-suit injunction.

**V.    CONCLUSION**

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Gamma's motion to stay is **DENIED**, whereas Custom's motion for an anti-suit injunction is **GRANTED**.

Further, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Gamma is to abort prosecution of the parallel Italian litigation initiated on December 1, 2015, in the Court of Reggio Emilia, Italy, pending this Court's resolution of the parties' dispute, and Gamma shall file a certification with this Court affirming that it has done so not later than Friday, May 6, 2016.

**IT IS SO ORDERED**.

Signed this 3rd day of May, 2016, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE